VICTORY, J.,
dissenting.
Iil dissent from the action of the Court in recalling the writ. The writ application was granted, the case briefed, and oral arguments made. At this juncture the case should be decided on the merits.
At the defendant’s armed robbery trial, Keisher Carter testified that the defendant owed her money and that they had established a time limit within which he was to repay the debt. She further testified that she and her friend, Sasha Hunter, picked the defendant up from work in order to collect some of the money, which she needed to pay her rent. She and Blunter drove defendant to a bank in Westwego, and after he did not withdraw any money there, he suggested they travel to the Shell station next door. After withdrawing $300.00 from an ATM at the Shell station, the defendant threw the money on *1214 the dashboard of Carter’s car and an argument erupted. Carter testified that she then gave the money to Hunter, who was seated in the back seat, to put into Carter’s purse, which was also in the back seat. Carter testified that the defendant then reached under his seat, pulled out a gun, and held it to her face. Both Carter and Hunter testified that the defendant then grabbed the cash from Hunter and fled the car. An off-duty constable deputy testified that he then observed a man, later identified as the defendant, walking quickly from the Shell station and saw him throw a black item into a ditch. When the defendant saw him and other deputy | {.approaching, he began to run. A search for the black object revealed a black Ruger nine millimeter handgun in the grass, which matched Carter’s description of the gun used in the armed robbery and which had the same serial number as a gun that the defendant’s ex-wife had observed in the defendant’s possession some months before the incident.
The victim’s testimony was corroborated by other witnesses, including Sasha Hunter, who testified that a debt was owed to Carter by the defendant, that the trip to the bank was to collect the money, and that an argument between the two culminated in the armed robbery, although she did not actually see the gun.
A jury found defendant guilty as charged of two counts of armed robbery. The Fifth Circuit vacated defendant’s conviction and sentence, finding that viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Lee, 04-1008 (La.App. 5 Cir. 3/1/05), 895 So.2d 84. Specifically, the court of appeal erroneously substituted its own judgment and found that not only did the state fail to prove that the money in question ceased to belong to the defendant at the time he retrieved it, but also that “Carter’s version of the events [was] not rational,” and that Carter’s testimony that the defendant pointed a gun to her head was not believable. Id.
However, contrary to the Fifth Circuit’s reinterpretation of the facts, any rational trier of fact could have found all elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Eyewitness testimony established every element of the offense and identified the defendant as the perpetrator. Corroborating evidence, most importantly the gun found discarded in the grass moments after defendant fled the scene, underscored the 13rationality of the jury’s verdict, as jurors could easily find the events described by Carter and Hunter credible, and certainly much more credible that the possibility that the defendant had simply dropped the gun into the grass at another time and left it there. In any event, a jury decides credibility issues, not a reviewing court. The court of appeal overstepped its authority in substituting its judgment for that of the jury. Therefore, this Court should overturn the court of appeal’s decision and reinstate the defendant’s conviction and sentence.